NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-83

COMMONWEALTH

vs.

EDDIE ROBLES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in September 2014, Eddie Robles, the defendant, was found guilty of trafficking in heroin in violation of G. L. c. 94C, § 32E, and of committing that crime within one hundred feet of a park in violation of G. L. c. 94C, § 32J; possession of cocaine with the intent to distribute in violation of G. L. c. 94C, § 32A; and possession of trazodone in violation of G. L. c. 94C, § 34.[1] On appeal, the defendant argues that the court erred in denying a motion to suppress evidence, that his arrest violated the Fourth Amendment to the

---

[1] With respect to the indictment charging possession of cocaine with the intent to distribute, the trial judge allowed the defendant's motion for a required finding of not guilty on the count charging distribution of cocaine within one hundred feet of a park in violation of G. L. c. 94C, § 32J. The trial judge also dismissed the subsequent offense portion of the indictment, because the Commonwealth was not ready to prove that count.

United States Constitution and art. 14 of the Massachusetts Declaration of Rights, and that there was insufficient evidence to prove an intent to distribute, and a violation of G. L. c. 94C, § 32J.  We affirm.

Discussion.  1.  Motion to suppress.  a.  Background.  "We summarize the facts as found by the motion judge . . . , supplemented by evidence in the record that is uncontroverted and that was implicitly credited by the judge" (quotation and citation omitted).  Commonwealth v. Jones, 100 Mass. App. Ct. 600, 601-602 (2022).  On April 10, 2012, supported by an affidavit alleging three controlled buys of either heroin or cocaine on April 6, 9, and 10, a search warrant was issued to search the defendant's residence in an apartment complex in Brockton, as well as "the person or in the possession of:  [the defendant]."  The next day, while preparing to execute the warrant, police observed a white Toyota Corolla enter the parking lot of the defendant's apartment complex.  The defendant, who had gotten out of the driver's side of the car, and two other people left the car and entered the defendant's apartment building.  Later that evening, officers conducting surveillance observed the defendant drive the Corolla away with two passengers.

Detective Brian Donahue of the Brockton police department, who knew of the defendant's suspended license and had been shown

a picture of the defendant, followed the Corolla onto Oak Street. The defendant pulled his car over to the side of the road about 100 to 150 feet away from the apartment building; the police had not signaled for him to stop his vehicle. Donahue pulled up behind the defendant, activated his emergency lights, and approached the vehicle. The driver identified himself as the defendant and stated that he had stopped because an alarm was going off in his house. Donahue arrested the defendant for operating with a suspended license and, along with other members of the Brockton police department, searched him, finding heroin, cocaine, and cash. After the arrest, the police executed the search warrant for the defendant's home, where additional narcotics were found.

Prior to trial, the defendant moved to suppress all items seized during the search of the defendant's person.[2] After an evidentiary hearing, the motion judge denied the defendant's motion to suppress on three separate grounds: (1) the search warrant authorized a search of the defendant as well as his apartment; (2) the officers had probable cause to make a

---

[2] The defendant argues on appeal that his motion to suppress evidence seized from the Corolla should have been granted. Because no evidence was seized from the car itself, we treat the argument as addressing seizure of evidence from the defendant's person when he got out of the Corolla. The defendant also moved to suppress evidence found during the search of his apartment. He did not press this motion on appeal.

3

warrantless felony arrest of the defendant based on three controlled buys and search him incident to arrest; and (3) the officers properly arrested the defendant for operating a motor vehicle with a suspended license.

   b. <u>Probable cause to arrest</u>.  The defendant conceded, as he should have, at oral argument that the affidavit established probable cause to arrest the defendant.  The affidavit in support of the application for the search warrant indicated that two reliable confidential informants purchased cocaine or heroin from the defendant in controlled buys on three occasions between one to five days prior to the search.  See <u>Commonwealth</u> v. <u>Charros</u>, 443 Mass. 752, 764-765, cert. denied, 546 U.S. 870 (2005) (buy made by reliable confidential informant within past fifteen days provided basis to stop defendant's motor vehicle and arrest him, independent of recently issued search warrant).  See also <u>Commonwealth</u> v. <u>Velez</u>, 77 Mass. App. Ct. 270, 274 (2010), abrogated on other grounds as recognized by <u>Commonwealth</u> v. <u>Lobo</u>, 82 Mass. App. Ct. 803, 807 (2012) (where at time car was stopped, troopers were aware of three controlled buys within month of stop with last buy within seventy-two hours, troopers

4

had probable cause to believe defendant had committed felony, and initial stop and subsequent warrantless search were valid).[3]

The fact that the stated basis for the arrest was for driving with a suspended license, and not for the underlying drug offenses, is not dispositive because an officer's subjective intent does not bind the Commonwealth.  See Commonwealth v. Lawton, 348 Mass. 129, 132 (1964) (search incident to arrest was valid where supported by probable cause that defendant violated breaking and entering law even if stated reason for defendant's arrest was not valid); Commonwealth v. Peters, 48 Mass. App. Ct. 15, 21 (1999) (at time of defendant's arrest for suspended license, police had probable cause to arrest defendant for possession of drugs).[4]

2.  Sufficiency of the evidence.  a.  Background.  We summarize the facts the jury could have found, reserving certain details for our discussion of the issues.  In April 2012, the defendant, who was driving a vehicle which he had pulled over to the side of the road of his own volition a short distance from his apartment building and approximately twenty-five feet from a

---

[3] The Charros and Velez cases also established that a search warrant, even one that authorizes a search of a person, does not authorize police to detain that person after the person has traveled from the home.  Charros, 443 Mass. at 764; Velez, 77 Mass. App. Ct. at 274.

[4] Because there was probable cause to arrest the defendant independent of the license suspension, we need not reach the other grounds for suppression raised by the defendant.

park, was arrested for driving with a suspended license. Members of the Brockton police department searched the defendant incident to the arrest and found a bag of heroin (later weighed to be 19.62 grams) in his front left interior jacket pocket, $200 in cash in the defendant's front left pants pocket, $500 in cash in the defendant's wallet in his rear pocket, a second small bag of heroin in his front right coat pocket, a cigarette pack in his front pants pocket in which there were two bags of cocaine, a black digital scale in the defendant's pants pocket, and another 1.1 grams of cocaine in defendant's pocket.

The defendant was then taken to his residence where the police executed a search warrant. When asked if there were drugs in the apartment, the defendant directed the police to a dresser in the defendant's bedroom, where the police found cocaine. In the kitchen, the police found two scales, sandwich bags, a hand sifter, latex gloves, a plate containing an off-white, off-brown residue, and two bags full of cutoff baggies. In a bedroom closet, the police found a duffel bag with twenty-nine trazodone pills, and three alprazolam pills. In the dining room, the police found a white bowl inside of which was white powder residue that field tested positive for cocaine. In total, the defendant possessed 24.88 grams of heroin, 12.77 grams of cocaine, twenty-nine tablets of trazodone, and three tablets of alprazolam.

b. <u>Standard of review</u>. The trial judge denied the defendant's motions for required findings of not guilty.[5] "We review the denial to determine whether the evidence offered by the Commonwealth was sufficient to permit the jury to infer that the Commonwealth has met its burden of proving the essential elements of the crimes charged beyond a reasonable doubt." <u>Commonwealth</u> v. <u>Rodriguez</u>, 456 Mass. 578, 582 (2010), citing <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 676-677 (1979). "[The] question is whether after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Latimore</u>, <u>supra</u> at 677, quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 319 (1979). "Our analysis asks not whether the evidence requires a finding of guilty, but whether it permits such a finding beyond a reasonable doubt."

---

[5] The defendant moved for a required finding of not guilty at the close of the Commonwealth's case and at the close of all of the evidence.

> "Because the defendant moved for required findings at the close of the Commonwealth's case and again at the close of all the evidence, [w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time. We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case" (quotation omitted).

<u>Commonwealth</u> v. <u>West</u>, 487 Mass. 794, 799-800 (2021), quoting <u>Commonwealth</u> v. <u>O'Laughlin</u>, 446 Mass. 188, 198 (2006).

7

Rodriguez, supra, quoting Commonwealth v. Nolin, 448 Mass. 207, 215 (2007).

c. Intent to distribute. The defendant argues that there was insufficient evidence to show that he possessed the narcotics with an intent to distribute.[6] We conclude that, viewing the evidence in the light most favorable to the Commonwealth, as we must, the Commonwealth's evidence was sufficient for a rational jury to find that the defendant harbored the requisite intent to distribute heroin and cocaine.[7]

Here, a State police trooper, who testified as an expert in how the drug trade operates, testified that the amount of heroin and cocaine found was more than is typical for personal consumption. See Commonwealth v. Sendele, 18 Mass. App. Ct. 755, 758 (1984), and cases cited ("Possession of a large quantity of an illicit narcotic raises an inference of intent to distribute"). See also Commonwealth v. Pratt, 407 Mass. 647, 653 (1990) (same). Additionally, no paraphernalia for drug consumption was found on the defendant or in his apartment. See Commonwealth v. Richardson, 479 Mass. 344, 360 (2018) ("Traditionally, drug possession in the absence of drug

---

[6] The defendant does not specify whether he means heroin or cocaine or both. We address both.

[7] The evidence of the controlled buys in the affidavit in support of the search warrant were not presented as evidence during the trial.

8

paraphernalia also is probative of intent").  The paraphernalia that was found permitted an inference of an intent to distribute.  See id. at 360-361.  The same officer testified that scales, sifters, latex gloves, and paper plates and bowls with residue on them are typically used for drug distribution, and that packaging drugs into the corners of cutoff baggies is a common method for heroin and cocaine distribution.[8]  The police found three scales, including one on the defendant's person.  In addition to items that might be found in any kitchen or household, such as the sifter or latex gloves, the police found two bags full of cutoff baggies, a paper plate with an off-brown, off-white residue on it, and a bowl with white powder residue which field tested positive for cocaine.  While some of the items may be typical kitchen objects, the evidence taken as a whole permits a reasonable juror to have concluded that the defendant had an intent to distribute.

Considering the case again at the close of the evidence does not lead to a different conclusion.  At trial, the defendant admitted that he possessed the drugs, but argued he had no intention to distribute the drugs as they were for personal use.  The defendant contends that many of the items found in the apartment are regular household items, such as the

_____

[8] The officer also testified that the amount of cash found on the defendant was not typical for someone who is addicted to drugs.

scales, plastic bags, sifter, plate, and latex gloves.  He claims that the amount of cash found was insignificant in light of the fact that there was no evidence of pagers, ledgers, or burner phones.  The Commonwealth's case did not deteriorate after the defendant testified, as the jury were entitled to discredit his testimony.  See Commonwealth v. Nhut Huynh, 452 Mass. 481, 485-486 (2008).

d.  Park zone.  General Laws c. 94C, § 32J, provides in relevant part:  "Any person who violates the provisions of [G. L. c. 94C, §§ 32, 32A, 32B, 32C, 32D, 32E, 32F, or 32I,] . . . within [one hundred] feet of a public park or playground . . . shall be punished by a term of imprisonment . . . ." Commonwealth v. Boger, 486 Mass. 358, 359-360 (2020), quoting G. L. c. 94C, § 32J.  "[I]ntent to commit the underlying drug crime is sufficient to violate § 32J, without additional proof of scienter of park boundaries."  Commonwealth v. Matta, 483 Mass. 357, 358 (2019).

The defendant argues that the Commonwealth failed to introduce sufficient evidence to prove that the defendant trafficked heroin within one hundred feet of a park and that the distance between the stop and the park was speculative.  In addition, the defendant cites Commonwealth v. Peterson, 476 Mass. 163 (2017), arguing that § 32J is not intended to apply to

someone who was in a car and merely traveling on a roadway adjacent to a park.

"After the elements of [the predicate] offense have been established, one need only take out the tape measure to see if [the park zone provision of § 32J] has been violated" (citation omitted). Commonwealth v. Roucoulet, 413 Mass. 647, 650-651 (1992). Here, a detective testified that he measured the distance between the traffic stop and the fence along the park wall with a surveyor's wheel, which he calibrated prior to using. The distance measured twenty-five feet. In addition to the measuring wheel, the Brockton superintendent of parks testified that Oak Street "runs just about through the middle of the park." We are satisfied that the Commonwealth's means of measuring the distance between the park and where the defendant stopped his vehicle permitted a finding that the car was stopped within one hundred feet of the park.

Next, the defendant relies on Peterson, 476 Mass. 163, to argue that the statute cannot apply here, where he fortuitously stopped his own vehicle near a park. In Peterson, the Supreme Judicial Court held that it would be "overreaching" to apply § 32J "to a defendant who is located momentarily within one hundred feet of a public park solely because he is a passenger in a motor vehicle that is driven on a public roadway past the park and, fortuitously, stops at a red light." Id. at 163-164.

11

The Peterson case is distinguishable.  Here, the defendant was the driver, not a passenger, and the defendant, not the police, selected the location for his stop.[9]  Moreover, the court in Peterson limited its holding to the "specific facts presented" and did not alter other decisions, including Roucoulet, 413 Mass. 647, and Commonwealth v. Labitue, 49 Mass. App. Ct. 913 (2000).  Peterson, supra at 169.  In Roucoulet, the court rejected the argument that a defendant's possession of drugs within a school zone, intended for distribution outside the zone, is not proscribed by statute.  Roucoulet, supra at 650.  In Labitue, we upheld a § 32J violation where police stopped the defendant's automobile in a school zone but a drug transaction had taken place more than the statutory distance from that school.  Labitue, supra at 914-915.  Accordingly, we reject the defendant's argument.

Judgments affirmed.

By the Court (Wolohojian,
Henry & Hershfang, JJ.[10]),

Joseph F. Stanton

Clerk

Entered:  August 14, 2023.

---

[9] The defendant testified that he pulled the car over because the alarm company from his apartment was calling his telephone. Nothing in the record indicates that the police caused the defendant's alarm to sound.

[10] The panelists are listed in order of seniority.